## Case No. 5,014.

### FOX v. PAINE et al.

[Crabbe, 271.] [1]

District Court, E. D. Pennsylvania. June 18, 1839.

[1] [Reported by William H. Crabbe, Esq.]

St. G. T. Campbell, for libellant.

G. M. Wharton, for respondent.

Mr. Campbell, for libellant, in conclusion.

HOPKINSON, District Judge (after stating the facts as above). The ownership of the libellant has been made out very clearly. The schooner appears to have been built by one John Compton, for himself and others. On the 15th of September, 1838, he executed bills of sale to the other owners. in the proportions to which they were respectively entitled, to wit. one fourth to William S. Reed, one fourth to William Murphy, one eighth to Levi Paine, and one eighth to Isaiah Dunlap, the other one fourth remaining his own. On the 15th October, 1838. Compton transferred one eighth of the schooner, that is, one half of his fourth, to Evan Fox, the libellant, for the consideration of $669 96. There is nothing to impeach the validity or fairness of this sale; on the contrary, there is positive proof that Fox gave full value for it. The interest of Fox, to the amount stated in his libel, being thus established, the defence is left on the ground set forth in the supplemental answer, that is, that the libellant does not appear to be an owner of the schooner in her enrolment and license, and has not complied with the requisitions of the revenue laws. We must recollect that this is not a question between the United States and this vessel, or her owners, or any of them; nor a question of the rights of this vessel, or her owners, in navigating her under the laws of the United States, nor to what privileges she is entitled

under those laws. It is a question between the owners themselves, and their rights against each other.

It is in full evidence that the respondents well knew of the purchase, by the libellant, of one eighth part of this schooner, from the same person, Compton, from whom they derived their title. The officer of the custom-house at Bridgetown, where she was built, also knew of the bill of sale from Compton to Fox, it being drawn by him. It seems, also, that Fox applied at the custom-house of this port, to have his name inserted in the enrolment and license of the schooner, and produced his bill of sale, but was told that, as all the owners resided in another district, new papers could not be granted here. There was, therefore, no attempt at fraud or concealment by Fox, either from the other owners, or the government. The right of Fox, and the agreement between him and Compton, by which he obtained it, were well known to the other owners. Yet, in April last, William Murphy, one of the owners, went to the custom-house at Bridgetown, and there swore that he, together with Levi Paine, William S. Reed, and Isaiah Dunlap, were the sole owners of the schooner, wholly omitting the name of Fox. Now, putting Fox out of question, how are these respondents the sole owners? They have shown title to but three fourths. Whatever right Compton had not transferred to Fox, he assigned to his creditors, on the 26th October, 1838, eleven days after his transfer of one eighth to Fox. We find, then, that Murphy, well knowing of Fox's right, goes to the custom-house, and swears that he, Paine, Reed, and Dunlap, are the sole owners of the schooner, and gets the enrolment and license, accordingly; and now, when Fox claims, against them, his right as a part owner, they tell him he has lost it, because his name is not in the enrolment and license. And why is it not there? By whose act was it omitted? Did Murphy give Fox notice of his intention to take out the enrolment and license, and to omit his name? Never. It is impossible for any court to sanction such a defence, unless under the imperative commands of the law. The omission in the registry and enrolment of this schooner, does not make it, in point of fact, a foreign vessel. It can but deprive her of the privileges of an American, but her ownership is, in truth, American.

Granting that the omission of the name of Fox has deprived the vessel of American privileges, whose fault was it? If a fraud has been committed on the revenue laws, whose fraud was it? Certainly not the libellant's. He had no part in the false statement made at the custom-house; it was not known to him. There was a double deception practised by Murphy; first, on the custom-house, and then on Fox, and now Murphy attempts to visit the consequences of his illegal act on the libellant. But suppose the consequence of this omission were even to convert the schooner, in point of law, into a foreign ship.

Is there anything unlawful in an American citizen becoming a part owner of a foreign ship? Certainly not. He cannot claim for her American privileges; but, as between the owners, their rights are the same. These owners have entered her as an American ship, the tonnage duties have been assessed as such, and they cannot now be allowed to tell this court that their knowingly omitting to insert the libellant's name in her license, has deprived her of her national character.

It is ordered and decreed, that William Murphy, William S. Reed, Isaiah Dunlap, and Levi Paine, enter into stipulations in the sum $1340, being double the estimated value of one eighth part of the said schooner Lodemia and Eliza, to Evan Fox, the libellant, owner of the said one eighth part, for the return of the said schooner to the amount of the share of the said Evan Fox; and, unless they shall do so, they do severally consent that execution shall issue forth against them, their heirs, executors, administrators, goods, and chattels, wheresoever the same shall be found; and upon this being done, by sufficient sureties, the said schooner shall be released from arrest.